1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE BARBARA J. ROTHSTEIN

IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JACOB ATKINSON, individually and on behalf of all others similarly situated, | Case No. 2:23-cv-01764-BJR |
| Plaintiff, | **DEFENDANT WILLIAMS-SONOMA STORES, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| v. | |
| WILLIAMS-SONOMA STORES, INC., a foreign profit corporation doing business as WILLIAMS SONOMA, POTTERY BARN, POTTERY BARN KIDS, and WEST ELM; and DOES 1-20, | |
| Defendants. | |

DEFENDANT'S MOTION TO DISMISS
(Case No. 2:23-cv-01764-BJR)

Defendant Williams-Sonoma Stores, Inc. ("WSSI") respectfully submits this motion to dismiss Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.    INTRODUCTION

Plaintiff's Complaint must be dismissed under Rule 12(b)(1) because he fails to allege that he suffered a concrete and particularized injury-in-fact.  Further, the Complaint must be dismissed under Rule 12(b)(6) for failure to state a viable claim for relief, because Plaintiff has not plausibly alleged—indeed, he cannot allege—that he qualifies as a "job applicant" under Washington's Equal Pay and Opportunity Act, RCW 49.58 ("EPOA").

## II.    STATEMENT OF FACTS

Plaintiff filed his Complaint against WSSI in King County Superior Court on October 17, 2023.  WSSI timely removed the case to this Court.  *See* Dkt. 1.  For purposes of this motion only, WSSI assumes the truth of the factual allegations in Plaintiff's Complaint.

Plaintiff alleges that he applied for a job opening for a part-time Stock Associate in King County with a WSSI retail brand, West Elm (the "Stock Associate Position"), on March 3, 2023. Dkt. 1-1 at 8, 13–15.  The Complaint is devoid of allegations regarding the details of this application—for example, he does not attach or describe his application materials, and he does not allege that he was qualified for and/or capable of performing the job (or even that he *wanted* the job).  Nevertheless, Plaintiff contends that the job posting[1] to which he applied did not disclose a wage scale or salary range as allegedly required under the EPOA.  *Id.* at 8.  He now purports to bring this case on behalf of "[a]ll individuals who . . . applied for a job opening in the State of

---

[1] For the purposes of this motion only, WSSI assumes the alleged advertisement for the Stock Associate Position was a "posting" for a "job opening" under the statute.  *See* RCW 49.58.110(1).  WSSI reserves the right to challenge both contentions at an appropriate time.

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

Washington with [WSSI], where the job posting did not disclose the wage scale or salary range for the position." *Id.*

Plaintiff's sole allegations of a purported "injury" are that he (1) "lost valuable time applying for jobs," and (2) was unable "to evaluate the pay for the position, negotiate that pay, and compare that pay to other available positions in the marketplace." *Id.* at 8. Plaintiff asserts three causes of action, all of which arise from the same fundamental claim. First, the Complaint seeks statutory or actual damages, whichever is greater, based on the alleged failure to disclose wage or salary ranges on job postings for positions in Washington, purportedly in violation of the EPOA. *Id.* ¶¶ 14–15, 27–31. Second, the Complaint seeks an injunction requiring WSSI to disclose wage scales and salary ranges in each job posting. *Id.* ¶¶ 32–33. Finally, the Complaint seeks a declaration that the alleged practice of failing to disclose wage scales or salary ranges in job postings is illegal. *Id.* ¶¶ 34–36.

In addition to the present litigation, Plaintiff has filed fifteen other carbon copy class actions against other companies for the same type of alleged violations of the EPOA's job posting disclosure requirements. Declaration of Claire Lesikar ¶ 2. In each lawsuit, Plaintiff alleged that he applied to that company's job posting but that it did not contain salary information. Specifically, Plaintiff brought lawsuits based on the following applications to jobs across industries and throughout western Washington: (1) two (unidentified) positions at a private research and investigations corporation in Federal Way, 24 miles south of Seattle; (2) one cashier position at a Denny's in Lynnwood, 16 miles north of Seattle; (3) two positions at Jacobs Solutions, Inc., a technical professional services firm, in Silverdale, 70 miles east of Seattle; (4) one amusement attendant position at Bowlero in Lynnwood, 19 miles north of Seattle; (5) one valet attendant

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

position at a Sonesta hotel in Seattle; (6) one cashier position at JC Penny in Lynnwood, 17 miles north of Seattle; (7) one sales associate position at Washington Fine Wine & Spirits in Seattle; (8) one Frozen Food Supervisor position at Albertson's in Lynnwood, 21 miles north of Seattle; (9) one position at a BP gas station in Woodland, 144 miles south of Seattle; (10) one ProSales Associate position at Herc Rentals, an equipment rental supplier, in Woodinville, 25 miles northeast of Seattle; (11) one position as a full-time room attendant at IHG Hotels & Resorts in Joint Base Lewis McChord, 43 miles south of Seattle; (12) one sales associate position at Aaron's in Longview, 127 miles south of Seattle; (13) one sales associate position at Burberry Limited in Tulalip, 39 miles north of Seattle; (14) one part-time retail sales associate position at Office Depot in Lynnwood, 16 miles north of Seattle; (15) one retail store associate position at Adidas in Tulalip, 38 miles north of Seattle; and (16) one Amusement Attendant position at Bowlero in Seattle. *Id.* ¶ 2. Plaintiff has not pled that he ever applied to a single Washington job that did comply with the EPOA's pay transparency requirements—rather, the sole pattern amongst these job postings spanning hundreds of miles (as shown below) is that he believed they were non-compliant.



Pictured: The location of each position to which Plaintiff applied in Washington.

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

### III.   QUESTIONS PRESENTED

1.   Whether Plaintiff, a self-employed acupuncturist and massage therapist who applied to a Stock Associate Position with Defendant—as well as many disparate positions across Washington, which were only alike insofar as they allegedly did not include compensation information in the job postings—was injured-in-fact when the job posting to which he applied allegedly failed to include a wage scale or salary range?

2.   Whether Plaintiff is a "job applicant" under the EPOA where the Complaint does not allege that he was qualified for, could perform, or even genuinely sought the job for which he applied?

### IV.   ARGUMENT

Absent Article III standing, this Court must dismiss for want of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  Once a defendant has moved to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing the Court's jurisdiction.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Additionally, the Court should dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The Court does not,

DEFENDANT'S MOTION TO DISMISS
(Case No. 2:23-cv-01764-BJR) – 4

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

however, accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  The Court may also take judicial notice of matters that are capable of being "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

### A.   The Complaint Does Not Allege Facts Sufficient to Establish that Mr. Atkinson Suffered an Injury-in-Fact.

Plaintiff cannot allege an injury-in-fact, because he has not suffered a cognizable injury from the mere procedural violation alleged in his Complaint.  To meet the standing requirements to avoid dismissal, a plaintiff must present sufficient facts to show he has suffered an "injury in fact," *i.e.,* an invasion of a legally protected interest that is (1) concrete and particularized and (2) actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992).  To be particularized, the injury "must affect the plaintiff in a personal and individual way." *Id.* at 339 (quotation marks omitted).  A general interest shared with the public at large in the proper application of laws is insufficient to meet the injury-in-fact requirement. *Lake v. Fontes*, 83 F.4th 1199, 1203 (9th Cir. 2023).

A violation of a statutory right does not automatically give rise to a concrete injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).  Instead, when a plaintiff alleges that a defendant violated a right created by a statute, the Court must still determine whether that violation caused the plaintiff to suffer a concrete injury-in-fact.  *Patel v. Facebook*, 932 F.3d 1264, 1270 (9th Cir. 2019).  "An allegation of bare procedural violation is insufficient to satisfy Article III." *Chennette*

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

*v. Porch.com, Inc.*, 50 F.4th 1217, 1221 (9th Cir. 2022). Accordingly, the Ninth Circuit employs a two-part test when analyzing whether a plaintiff has sufficiently established a concrete injury resulting from a statutory violation: "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1113 (9th Cir. 2017).

### 1. The EPOA Job Posting Requirement Was Not Established to Protect Plaintiff's Concrete Interests.

Washington enacted the EPOA to promote gender pay equity for employees and job applicants. RCW 49.58; Wash. State Dep't of Lab. & Indus., ES.E.1, Employment Standards 1 (2022). Effective January 1, 2023, the EPOA was amended to require that employers disclose a job position's wage scale or salary range in job postings. RCW 49.58.110.

Here, Plaintiff alleges, at most, a bare procedural violation of the EPOA that is not sufficient to establish a concrete injury-in-fact. *See Chennette*, 50 F.4th at 1221. Even if the EPOA was established to protect the right of a job applicant to have access to wage scale or salary range information, Plaintiff has not alleged that he was qualified for or even interested in the Stock Associate Position, nor that he was offered the position, intended to accept the position, or would not have applied to the position had he known the wage scale or salary range information. *See generally* Dkt. 1-1. Clearly, then, he has not meaningfully alleged that he is within the zone the Washington Legislature sought to protect. *See, e.g.*, Equal Pay & Opportunities Act Q&A, *available at* https://lni.wa.gov/workers-rights/wages/equal-pay-opportunities-act/equal-pay-and-opportunities-act-qa ("L&I will investigate complaints [regarding violations of the EPOA] filed only by applicants who have applied to jobs in good faith with the intent of gaining employment.").

DEFENDANT'S MOTION TO DISMISS
(Case No. 2:23-cv-01764-BJR) – 6

Instead, Plaintiff applied to the Stock Associate Position while simultaneously applying to at least eighteen other open positions scattered hundreds of miles across Washington—many of which are for completely different types of positions, and all of which have just *one* thing in common: Plaintiff contends they do not comply with the EPOA.  *See* Lesikar Decl. ¶ 2; Exs. A–O.  These positions are varied in geographic location (*e.g.*, from Woodland up to Tulalip, and from Woodinville out to Silverdale), industry (*e.g.*, equipment rentals, gas stations, grocery and retail stores, engineering firms, hotels, and bowling alleys), and position (*e.g.*, attendant, sales, cashier, and supervisor positions).  *See id.*  Plaintiff's own pattern of allegations (as reflected in his fifteen separate lawsuits filed in the past several months) do not reflect a genuine job applicant within the zone that the Legislature sought to protect, but an individual who already has a profession—as a for-hire plaintiff hoping to be compensated by statutory damages and representative plaintiff awards.

Indeed, if Plaintiff is successful in his fifteen lawsuits, he stands to receive at least $75,000 in statutory damages ($5,000 statutory damages x 15 lawsuits) and $300,000 ($20,000 plaintiff's award x 15 lawsuits) in representative plaintiff awards.  *See* Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement at 3, *Schneider v. Assurance IQ, LLC*, No. 22-2-15633-3 SEA (King Cnty. Super. Ct. Sept. 21, 2023) (showing that Plaintiff's counsel seeks $20,000 awards for class representatives).  But the EPOA plainly was not established to create a new profession of "professional class representative."  Rather, it was created to ensure pay equity and to protect people from the alleged burden of going through rounds of interviews only to find out they cannot live on the offered pay.  *See* Dkt. 1-1 at 6.

DEFENDANT'S MOTION TO DISMISS
(Case No. 2:23-cv-01764-BJR) – 7

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

In light of the above facts, which are either contained in the Complaint or subject to judicial notice, Plaintiff does not and cannot plausibly allege standing.  This case is similar to *Beane*, in which the court dismissed two claims because the plaintiff failed to allege a concrete injury-in-fact, even though the plaintiff had alleged procedural violations of the "timeliness" and "amount" requirements of the Fair Debt Collection Practices Act ("FDCPA").  *Beane v. RPW Legal Servs., PLLC*, 378 F. Supp. 3d 948, 958 (W.D. Wash. 2019).  First, the court found that, despite a delay in receiving a validation notice more than five days after the deadline, it was not clear from the plaintiff's complaint "what harm this delay caused." *Id.*  Noting that the purpose of the validation letter was to eliminate the problem of debt collectors dunning the wrong person or attempting to collect debts that the consumer has already paid, the court found that the plaintiff failed to allege what she would have done differently had the letter not been delayed. *Id.*  Accordingly, the court found that "this alleged 'timeliness' violation did not seem to have any impact on Plaintiff's right or ability to understand or contest the debt." *Id.*  Second, the court found that the alleged violation of Section 1692g(b) was similarly specious where the complaint alleged she was deprived of the "time to digest the documents provided and make a decision whether to, for instance, make a settlement offer on the debt rather than undergo the stress of dealing with a summary judgment motion in court." *Id.*  The court again found this allegation unclear as to what the alleged harm referred to, or whether such an injury is recognizable under the statute, because the claimed violation appeared "not to have prejudiced Plaintiff's informational rights or ability to contest the debt in any way this Court can identify." *Id.*[2]

---

[2] The court did find, however, that the plaintiff was able to articulate a cognizable injury for her claim under Section 1692g(a) involving an "uncertain" balance statement. *Beane*, 378 F. Supp. 3d at 958.  This was because, the court stated, the failure to provide a certain balance "prejudiced Plaintiff's ability to make an intelligent decision on whether

DEFENDANT'S MOTION TO DISMISS
(Case No. 2:23-cv-01764-BJR) – 8

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

Similarly, here, Plaintiff does not allege that he would have done anything differently, or otherwise would have been impacted, had the WSSI job posting included additional compensation information.  He does not contend that he asked the company for compensation information and was denied, that the lack of compensation information in the posting caused him to accept a position in which his pay differed from others, nor that the job to which he applied paid less than he would have expected or hoped.  He was not injured simply by virtue of a voluntary decision to click "Apply" on a website, especially if he would have applied to the job irrespective of the compensation information or, even more likely here, if he *intentionally* applied to a posting that he thought did not comply with the EPOA because he hoped to become a class representative.

### 2. The Procedural Violations Alleged in Plaintiff's Complaint Do Not Harm Plaintiff, Instead They Potentially Enrich Him.

Plaintiff's Complaint does not allege that he needed additional information to negotiate his salary or that he would have chosen to forgo the application had the job posting included additional information.  *See Beane*, 378 F. Supp. 3d at 958 (holding that the plaintiff lacked standing to bring one of her claims because she failed to allege what she would have done differently had a debt validation notice letter not been delayed).  Instead, Plaintiff only stands to gain from his serial lawsuits.

In *Bassett v. ABM Parking Servs., Inc.*, the Ninth Circuit addressed a similar procedural violation without harm under the Fair Credit Reporting Act's ("FCRA") requirement that businesses redact a credit card's expiration date on printed receipts.  883 F.3d 776, 777–78 (9th

___

to settle the debt, and for what amount." *Id.*  A similar effect on concrete decision-making is absent from Plaintiff's complaint.

Cir. 2018).  The plaintiff alleged that a parking garage had violated this requirement by giving him a receipt displaying his card's full expiration date.  The Ninth Circuit held that, even if the FCRA created a substantive right to the "nondisclosure of a consumer's private financial information to identity thieves," the failure to redact the expiration date did not impact this *substantive* right, because no one but the plaintiff himself saw the expiration date.  *Id.* at 778, 782–83.  Similarly, by analogy, even if the EPOA did create a substantive right for good faith job applicants to obtain wage scale or salary range information, any failure to have included that information in the Stock Associate Position posting does not harm Plaintiff because he has not alleged that he needed that information, would have used that information, or would have been impacted by the lack of such information in the job position.  As a result, the failure to include a wage scale or salary range in the Stock Associate Position did not impact Plaintiff's substantive rights.  Indeed, if anything, the most reasonable inference from his own pattern of lawsuits is that he *sought out* job postings that did not include such information.

Plaintiff not only lacks a concrete injury, he also cannot prove that he suffered a *particularized* injury.  Plaintiff does not allege any facts showing that any withheld wage scale or salary range information affected him in a personal and individualized way.  *Spokeo, Inc.*, 578 U.S. at 340.  Instead, Plaintiff's Complaint demonstrates that he simply shares a general interest with the public at large in employers complying with the EPOA, which does not translate into any particularized harm to Plaintiff.  *Lake*, 83 F.4th at 1203.  Because the Complaint has failed to sufficiently allege a concrete *or* particularized injury, this Court must dismiss the complaint.  *See Maya*, 658 F.3d at 1067; Fed. R. Civ. P. 12(b)(1).

DEFENDANT'S MOTION TO DISMISS
(Case No. 2:23-cv-01764-BJR) – 10

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

**B.      Plaintiff's Complaint Fails to State A Claim as Required Under FRCP 12(b)(6), Because Plaintiff is Not a "Job Applicant" Under the EPOA.**

Plaintiff does not qualify as a "job applicant" under the EPOA because he does not plausibly allege that he applied to work for WSSI in a good faith attempt to obtain employment. To the contrary, his own actions reflect that he only applied to WSSI to manufacture a lawsuit.

**1.      Only Good Faith Job Applicants Can Bring Claims Under the EPOA, As Shown by the EPOA's Legislative History and Agency Guidance.**

When construing a state statute, a federal court must apply that state's principles of statutory interpretation. *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004). Under Washington law, courts will first assess whether the statutory language is clear on its face or ambiguous. *Nelson v. P.S.C., Inc.*, 535 P.3d 418, 423 (Wash. 2023). A statute is ambiguous when the court finds that the language is subject to more than one reasonable interpretation. *Jametsky v. Olsen*, 317 P.3d 1003, 1006 (Wash. 2014). If the language is ambiguous, the court "may resort to statutory construction, legislative history, and relevant case law for assistance in discerning legislative intent." *Id.* (quotation marks omitted). Further, Washington courts owe deference to the state agency interpretation of a state statute that the agency enforces "if the law being interpreted is within [that] agency's expertise." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 911 (9th Cir. 2003) (alteration in original) (citing *Budget Rent A Car Corp. v. Wash. Dep't of Licensing*, 144 Wn. 2d 889, 31 P.3d 1174, 1180 (2001)). Here, the Department of Labor and Industries ("L&I"), which regulates and enforces Washington labor standards, was granted the authority to adopt rules to implement sections of the EPOA. RCW 49.58.090; RCW 49.58.010(2). In addition, Washington courts avoid the "literal reading of a statute which would result in

1    unlikely, absurd, or strained consequences." *Univ. Ins., LLC v. Allstate Ins. Co.*, 564 F. Supp. 3d

2    934, 941 (W.D. Wash. 2021) (internal citation omitted).

3    To state a viable claim under the EPOA, a plaintiff must plausibly allege they are a "job

4    applicant" (or an employee) and thus entitled to remedies for the statutory violation.  *See* RCW

5    49.58.110(4) ("A *job applicant* or an employee is entitled to the remedies in RCW 49.58.060 and

6    49.58.070 for violations of this section.") (emphasis added); *Twombly*, 550 U.S. at 570; *Iqbal*, 556

7    U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows

8    the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

9    Under Washington's principles of statutory interpretation, L&I's guidance, the EPOA's legislative

10   history, and commonsense, the term "job applicant" should be interpreted to mean someone who

11   applied to a job in good faith with the bona fide intent to seek employment in Washington.

12   As an initial matter, the term "job applicant" is not defined in the EPOA, and it is subject

13   to more than one reasonable meaning.  Many Washington statutes use this term, and they define it

14   in a variety of different ways—most if not all of which require something more than someone who

15   simply clicks "Apply" on an online application portal.  For example, the Employment Agency Act

16   defines an applicant as someone "*seeking or entering into* any arrangement for his or her

17   employment."   RCW 19.31.020(1) (emphasis added).   Another statute, RCW 43.101.010(1),

18   defines an "applicant" even more narrowly as someone "who *has received* a conditional offer of

19   employment" (emphasis added).  This background statutory language clearly shows that when the

20   Legislature uses the term "applicant," it means different things in different contexts.  As a result,

21   this Court must assess the Legislature's intent, agency guidance, and other appropriate sources to

22   determine what the Legislature meant when it used the term "applicant" in the EPOA.

23

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

Given the ambiguity in the statute, the Court should look to statutory construction, legislative history, relevant case law, and agency guidance for assistance.  At a minimum, this term at least requires that Plaintiff was genuinely seeking employment with WSSI in good faith—it may even require him to have received a conditional offer of employment.  Either way, Plaintiff's claim fails.  Plaintiff has alleged no more than that he clicked "Apply" to the job posting.  At the very least, the legislature could not have intended, absent deliberate language, to impose a new, superficial definition, absent in other statutes, that would work to enable overzealous and opportunistic actors to subject businesses to unlimited liability for one non-compliant job posting. *See Univ. Ins., LLC*, 564 F. Supp. 3d at 941 (finding that Washington courts will avoid statutory interpretations leading to absurd consequences).

*First*, the EPOA's legislative history indicates the Legislature was specifically seeking to *narrow* the group of potential plaintiffs when it added this term to the statute.  Senate Bill 5761, which created the job posting disclosure requirement, amended RCW 49.58.110(4) to limit the scope of individuals who can bring a lawsuit under the EPOA.  Prior to January 1, 2023, any "individual" could bring an EPOA claim.  *See* Senate Bill 5761, Sec. 1(4).[3]  However, with the new job posting requirement, the legislature chose to significantly limit the pool of potential plaintiffs to "job applicants" and employees.  *Id.*  This winnowing of the potential plaintiff pool reflects that "job applicant" means something more than any individual alleging a statutory violation.

---

[3]   Available at https://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bills/Session%20Laws/   Senate/5761-S.SL.pdf?cite=2022%20c%20242%20%C2%A7%201/

MORGAN, LEWIS & BOCKIUS LLP
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL (206) 274-6400 FAX (206) 274-6401

*Second*, L&I's guidance suggests that, at a minimum, only a "good faith" job applicant can bring claims under the EPOA.  The EPOA does not specifically define "job applicant."  *See* RCW 49.58.  However, L&I issued guidance that it will "investigate complaints filed *only* by applicants who have applied to jobs *in good faith with the intent of gaining employment*."  *Equal Pay & Opportunities Act Q&A*, Wash. Dep't of Lab. & Indus., https://lni.wa.gov/workers-rights/wages/equal-pay-opportunities-act/equal-pay-and-opportunities-act-qa (last visited Dec. 7, 2023) (emphasis added).

*Third*, L&I's guidance comports with commonsense.  To permit any person to be entitled to statutory penalties for a technical violation of the EPOA would result in a boon to bad faith, opportunistic applicants who may not even intend to work in Washington.  Under that approach, a person could troll the internet looking for non-compliant job postings and earn a fortune simply by submitting bad-faith job applications to each such posting.  Meanwhile, an employer that inadvertently posts a single non-compliant job posting could face catastrophic liability to a class of people who *intentionally* applied to the position just in the hopes of receiving $5,000 civil penalties.  The statute is intended to protect Washington workers, not create a windfall for clever internet-users who lack scruples. Plaintiff himself illustrates the necessity of requiring that a job applicant submit their application in a good faith, bona fide attempt to obtain employment, given his pattern of applying to jobs across Washington, which only have one thing in common:  He alleges that they do not comply with the EPOA.

## 2.   Plaintiff Is a For-Hire Plaintiff, Not a Good Faith Job Applicant.

Plaintiff's pattern of lawsuits reflect that he did not intend to seriously consider accepting the Stock Associate Position.  Meanwhile, the Complaint is devoid of allegations plausibly

showing that Plaintiff was a bona fide applicant seeking employment with WSSI in good faith.

The Stock Associate Position that is the subject of this action is located in downtown Seattle—yet, the same day he applied to the position, Plaintiff also applied to be a gas station attendant *144 miles south* of Seattle.  Over 10 days, Plaintiff applied to disparate job postings located hundreds of miles across Washington, and within months, he has filed suit against those employers responsible for the postings.  Lesikar Decl. ¶ 2; *see* Dkt. 1-1 (noting the date of service in October).  Meanwhile, Plaintiff's Complaint alleges nothing more than that he clicked "Apply" to the position. Dkt. 1-1 at 7.  Indeed, throughout the Complaint, the Stock Associate Position is mentioned *once*, and the complaint is otherwise completely devoid of allegations supporting that Plaintiff applied to the Stock Associate Position in good faith to obtain employment.  *See id.* Having made *none* of these allegations, Plaintiff cannot possibly state a claim, let alone state a claim to relief "that is plausible on its face."  *Twombly*, 550 U.S. at 570.

In sum, the EPOA is not intended to protect bad faith, opportunistic applicants like Plaintiff.  Because Plaintiff's own Complaint does not plausibly show that he applied to the Stock Associate position in good faith, he cannot state a viable claim under the EPOA and this Court should dismiss the Complaint.

### V.  **CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed.

### **CERTIFICATE OF CONFERRAL**

Counsel for WSSI certifies that the parties met and made a good-faith effort to confer to avoid filing this Motion on February 8, 2024.  The parties were unable to reach an agreement.

///

DEFENDANT'S MOTION TO DISMISS
(Case No. 2:23-cv-01764-BJR) – 15

1    DATED this 22nd day of February 2024.

2                                       *I certify that this memorandum contains 4,544 words, in*
                                        *compliance with the Local Civil Rules.*
3
                                        **MORGAN, LEWIS & BOCKIUS LLP**
4
                                        By: *s/ Damon C. Elder*
5                                       Damon C. Elder, WSBA No. 29413
                                        Claire M. Lesikar, WSBA No. 60406
6                                       1301 Second Avenue, Suite 3000
                                        Seattle, WA 98101
7                                       Phone: (206) 274-6400
                                        Email: damon.elder@morganlewis.com
8                                               claire.lesikar@morganlewis.com

9                                       *Attorneys for Defendant*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DEFENDANT'S MOTION TO DISMISS                          **MORGAN, LEWIS & BOCKIUS LLP**
(Case No. 2:23-cv-01764-BJR) – 16                      1301 SECOND AVENUE, SUITE 3000
                                                       SEATTLE, WASHINGTON 98101
                                                       TEL (206) 274-6400 FAX (206) 274-6401